### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANGELA D. SIMMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. 24-1605 (RJL) |
| FRANK J. BISIGNANO,[1] | ) ) | |
| *Commissioner of Social Security,* | ) ) | |
| Defendant. | ) ) ) | |

### MEMORANDUM OPINION
August 5ᵗʰ, 2026 [Dkt. #9, 12]

Plaintiff Angela D. Simms ("plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("the Commissioner") denying plaintiff's application for disability insurance benefits. Plaintiff argues that the administrative law judge ("ALJ") who reviewed her application should have included additional mental limitations in the determination of plaintiff's residual functional capacity. Upon a careful review of the record, I conclude that plaintiff's argument is without merit and the denial of disability insurance benefits was supported by substantial evidence. I will therefore **DENY** plaintiff's motion for judgment of reversal and **GRANT** the Commissioner's motion for judgment of affirmance.

---

[1] The Court takes judicial notice of the fact that Frank J. Bisignano was confirmed by the U.S. Senate as Commissioner of Social Security on May 6, 2025. He is therefore automatically substituted for former Acting Commissioner Carolyn Colvin as the defendant in this case. *See* Fed. R. Civ. P. 25(d).

**BACKGROUND**

## I.  Statutory Framework

To receive disability insurance benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(E). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To be eligible for benefits, a claimant must have "[a] physical or mental impairment . . . of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, the Social Security Administration ("SSA") follows a five-step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). *First*, the claimant must show she is not engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). *Second*, the claimant must show she has a "severe medically determinable physical or mental impairment," *id.* § 404.1520(a)(4)(ii), that "significantly limit[s]" her ability to perform "basic work activities," *id.* § 404.1520(c). *Third*, the claimant must show that her impairment meets or equals one of the conditions listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's impairment is not listed, then the ALJ determines the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). The RFC assessment determines "the most [the claimant] can still do" after accounting for any limitations from her medical impairments. *Id.* § 404.1545(a)(1). *Fourth*, the claimant

2

must show that, given her RFC, she is nonetheless incapable of performing her "past relevant work." *Id.* § 404.1520(a)(4)(iv). If the claimant is able to make the requisite showing, the burden shifts to the agency. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). *Fifth* and finally, the ALJ determines whether the claimant is still capable of "mak[ing] an adjustment to other work" available in the national economy given her RFC. *Id.* § 404.1520(a)(4)(v).

## II.    Factual Background

Plaintiff Angela Simms was born in August of 1973. Admin. R. ("A.R.") [Dkt. #6] 221. She alleges that she became disabled on September 29, 2020 due to post-traumatic stress disorder, anxiety, mood disorder, migraines, arthritis, neuropathy, degenerative disc disease, carpal tunnel syndrome, chronic pain, and hypertension. A.R. 218, 264–65.

Simms has previously worked as a cashier, restaurant server, and security clerk, A.R. 36, and she most recently worked as a store associate at a CVS Pharmacy. A.R. 265–66. Plaintiff quit her job at CVS because, in her words, it became "too overwhelming." A.R. 51. Plaintiff explained that "[w]hen things happen, I hold them in and after a couple times, it's really hard for me to hold in my reactions and things like that." *Id.* Plaintiff testified that she "just couldn't deal with it anymore" and resigned. *Id.*

Plaintiff has a history of physical limitations and mental health challenges. Between 2019 and 2023, plaintiff "sought treatment at Hillcrest Children and Family Center for mood disturbances, depression, and anxiety." Def.'s Mot. for J. of Affirmance ("Def.'s Mot.") [Dkt. #12] at 5; A.R. 310–52. However, plaintiff has repeatedly declined medication for mental health symptoms, preferring therapy. Def.'s Mot. at 5; A.R. 439.

In January 2021, plaintiff was evaluated by Dr. Patricia Cott, a state agency mental health consultant. A.R. 113. Dr. Cott found that plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.* Based on these limitations, Dr. Cott opined that plaintiff could "complete a standard work day and week performing tasks that are not overly demanding or stressful and interacting adequately with others at least on a superficial level." A.R. 117.

In April 2021, plaintiff was evaluated by Dr. Nancy Heiser, another state agency mental health consultant. A.R. 122–23. Like Dr. Cott, Dr. Heiser found that plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.* Dr. Heiser concluded that plaintiff could "sustain attention and pace to carry out simple instructions on a regular basis to complete a normal workweek" and could "interact with others to perform routine tasks with occasional interaction with the public." A.R. 126.

### III.   Plaintiff's Application for Benefits

Plaintiff filed an application for disability insurance benefits on December 9, 2020. A.R. 221. She also filed an application for supplemental security income on May 7, 2021. A.R. 228. The agency denied her claims initially and upon reconsideration. A.R. 132, 141.

Plaintiff then filed a request for a hearing before an ALJ, which was held on April 4, 2023. A.R. 43. Plaintiff testified about her last job as a cashier at CVS and stated that she quit because of her difficulty containing her "reactions" to other people. A.R. 51. She

4

testified that since her alleged onset date, she had begun selling plants on Facebook Marketplace, but she was not making much money. A.R. 55. She acknowledged her difficulties with containing her "outbursts" but said she was working on breathing exercises and talking with family to help her when feeling irritable. A.R. 65. She described her outbursts as consisting of facial expressions, saying things under her breath, and talking back to customers. A.R. 67–68.

On July 27, 2023, the ALJ issued a decision denying benefits. *See* A.R. 19–38. The ALJ evaluated plaintiff's application using the five-step sequential evaluation process described in 20 C.F.R. § 404.1520(a). At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since September 29, 2020, the alleged onset date." A.R. 21. At step two, the ALJ found that plaintiff had the following severe impairments: "degenerative disc disease, right upper extremity carpal tunnel syndrome, osteoarthritis, bilateral hallux valgus and pes planus deformity, migraines, affective disorder, posttraumatic stress disorder, and anxiety disorder." A.R. 21. At step three, the ALJ found that plaintiff did not have an impairment that met or equaled the severity of one of the impairments in the SSA's regulations. A.R. 22.

The ALJ then determined, based on the evidence presented, that plaintiff retained "the residual functional capacity to perform light work" with several limitations:

> [T]he claimant can frequently push and pull with the right upper extremity, and she can frequently push/pull with the bilateral lower extremities. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, and scaffolds. The claimant can frequently handle and finger with her right upper extremity. The claimant must avoid concentrated exposure to extreme heat and cold; wetness; vibration; and hazards, such as dangerous machinery and unprotected heights. The claimant can tolerate noise at

5

no more than the moderate intensity level per the Selected Characteristics of Occupations (SCO). The claimant can perform simple, routine tasks, requiring no more than occasional changes in the work setting, occasional judgment or decision-making, and no production rate for pace of work (e.g., assembly-line work). *The claimant can tolerate occasional interaction with the general public, co-workers, and supervisors.*

A.R. 25 (emphasis added).

The ALJ supported the RFC finding with a lengthy review of the medical evidence and testimony. A.R. 25–35. This included consideration of the 2021 opinions provided by Dr. Cott and Dr. Heiser. As summarized by the ALJ, Dr. Cott concluded that plaintiff could "complete a standard workday and week performing tasks that were not overly demanding or stressful and to interact adequately with others at least on a superficial level." A.R. 34. Dr. Heiser concluded, similarly, that plaintiff could "interact with others to perform and/or routine tasks with occasional interaction with the public." *Id.* The ALJ found these opinions "persuasive," "supported by the evidence they reviewed," and "consistent with other evidence." *Id.*

Having determined plaintiff's RFC, the ALJ then concluded, at step five, that plaintiff was "unable to perform any past relevant work." A.R. 35. The ALJ finally concluded, considering plaintiff's age, education, work experience, and RFC, that there were jobs existing in significant numbers in the national economy that plaintiff could perform, including mail sorter, marketer, and office helper. A.R. 36–37. Accordingly, the ALJ concluded that plaintiff was not disabled. A.R. 37–38. On January 22, 2024, the SSA Appeals Council declined to review the ALJ's decision, making that decision the final decision of the Commissioner. A.R. 8–13.

6

## IV.    This Lawsuit

On May 31, 2024, plaintiff filed suit in this Court, seeking federal judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See* Compl. [Dkt. #1]. Plaintiff filed a motion for judgment of reversal on September 6, 2024. *See* Pl.'s Mot. for J. of Reversal ("Pl.'s Mot.") [Dkt. #9]. The Commissioner filed a response and motion for judgment of affirmance on December 4, 2024. *See* Def.'s Mot. Plaintiff filed her reply in support of her motion on December 18, 2024. *See* Reply [Dkt. #14]. The motions are now ripe for decision.

## LEGAL STANDARD

When reviewing a disability decision by the Commissioner of Social Security, the district court must affirm the decision if it "is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler*, 353 F.3d at 999 (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The test "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Grant v. Kijakazi*, 619 F. Supp. 3d 128, 135 (D.D.C. 2022) (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003)).

"The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 33 (D.D.C. 2014) (citation omitted). While the court should "carefully scrutinize the entire record," it must not "replace the

7

[Commissioner's] judgment concerning the weight and validity of the evidence with its own." *Mitchell v. Berryhill*, 241 F. Supp. 3d 161, 166 (D.D.C. 2017) (citation omitted).

## ANALYSIS

Plaintiff challenges the Commissioner's decision on a single ground: that the ALJ's mental RFC determination should have reflected additional limitations based on the opinion from Dr. Cott. Pl.'s Mem. in Supp. of Mot. ("Pl.'s Mem.") [Dkt. #9-1] at 9–13. Plaintiff argues that while the ALJ "recognized" Dr. Cott's opinion that plaintiff could maintain only "superficial interaction" with others, the ALJ ultimately "included only a limitation to *occasional* interaction with the general public." *Id.* at 9 (emphasis added). The Commissioner argues that the ALJ properly accounted for Dr. Cott's opinion by limiting plaintiff's RFC to occasional interaction with others. *See* Def.'s Mot. at 11. I agree with the Commissioner and find that the decision denying benefits is supported by substantial evidence.

An RFC is a determination of "the claimant's uppermost ability to perform regular and continuous work-related physical and mental activities in a work environment." *Butler*, 353 F.3d at 1000. It involves a "'function-by-function' inquiry based on all of the relevant evidence" and "must contain a 'narrative discussion' identifying the evidence that supports each conclusion." *Id.* (citation omitted). The ALJ must "explain the basis of the restrictions" listed in the RFC with "citations to 'specific medical facts . . . and nonmedical evidence'" relied on. *Mitchell*, 241 F. Supp. 3d at 168 (alteration in original) (citation omitted). The ALJ "cannot simply pronounce the claimant's RFC after summarizing the record evidence." *Id.* But rather he must "build an accurate and logical bridge from the

8

evidence to [his] conclusion[s]." *Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015) (citation omitted).

The opinion at issue here is Dr. Cott's conclusion that plaintiff should have superficial contact with the public. Based on her evaluation, Dr. Cott opined, among other things, that plaintiff could "complete a standard work day and week performing tasks that are not overly demanding or stressful and interacting adequately with others *at least on a superficial level.*" A.R. 117 (emphasis added).

The ALJ adequately accounted for this opinion in the RFC determination. The ALJ's RFC determination included an exhaustive review of the record evidence. *See* A.R. 25–35. This review included Dr. Cott's January 2021 opinion that plaintiff could "interact adequately with others at least on a superficial level," A.R. 34, as well as Dr. Heiser's April 2021 opinion that plaintiff "has moderate limitations as to interacting with the general public, but she can interact with others to perform routine tasks with occasional public interaction," *id.* The ALJ found both of these opinions "persuasive," "supported by the evidence they reviewed," and "consistent with other evidence." *Id.* Accordingly, the ALJ incorporated the opinions into the overall RFC determination, which noted that plaintiff "can tolerate occasional interaction with the general public, co-workers, and supervisors." A.R. 25.

To be sure, the ALJ did not use the exact same language as Dr. Cott when describing the limitations on plaintiff's RFC. Dr. Cott limited plaintiff to "superficial" interaction with others, A.R. 34; the ALJ limited plaintiff to "occasional" interaction with others, A.R. 25. But the ALJ did not need to "repeat [Dr. Cott's] remarks verbatim" in order to

"sufficiently capture[] the essence" of her opinion. *Mitchell*, 241 F. Supp. 3d at 172 (quoting *Carver v. Colvin*, 600 Fed. App'x 616, 620 (10th Cir. 2015)). The ALJ adequately captured Dr. Cott's (and Dr. Heiser's) conclusion that plaintiff could tolerate *some* interaction with other co-workers and the public but only on a *limited* basis. Plaintiff's insistence that the ALJ "us[e] the same words" as Dr. Cott sets the bar far too high. *Id.*; *Oxner v. Kijakazi*, 2022 WL 17370199, at *9 (D.D.C. Aug. 5, 2022) (rejecting argument that "RFC was flawed due to slight word variations" between RFC and state agency limitation findings).

Plaintiff argues, nonetheless, that "occasional" and "superficial" have different meanings. *See* Pl.'s Mem. at 10. According to plaintiff, "occasional" interaction speaks to the *quantity* of interaction, while "superficial" interaction speaks to the *quality* of interaction. *Id.* However, plaintiff "fails to explain why these distinctions would lead to a different result." *Oxner*, 2022 WL 17370199, at *9; *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (discussing burden to show that error resulted in prejudice). Based on the ALJ's RFC determination, the vocational expert in this case identified six jobs existing in significant numbers in the national economy that plaintiff could perform. A.R. 37. All but one of these jobs require the lowest level of interpersonal interaction based on the ratings in the Dictionary of Occupational Titles ("DOT").[2] And none of these jobs require contact

---

[2] Appendix B of the Dictionary of Occupational Titles ("DOT") provides a rating of the amount of interaction with other people for each of the identified jobs. *See* Dictionary of Occupational Titles, https://occupationalinfo.org/appendxb_1.html (last visited on July 10, 2026). Of the six jobs identified by the ALJ in this case, five require a degree of interaction rated as Level 8, described as "Taking Instructions-Helping: Attending to the work assignment instructions or orders of superior." *Id.*; *see also* A.R. 37 (listing the DOT occupational codes for the six identified occupations). This is the designation for jobs with the

with the public.[3]   As such, any error in failing to further limit plaintiff's RFC to "superficial" interaction was "inconsequential to the ultimate non-disability determination" and therefore "harmless." *Davis v. Berryhill*, 272 F. Supp. 3d 154, 180 (D.D.C. 2017) (cleaned up); *see also, e.g., Goforth v. Colvin*, 2014 WL 1364992, at *6 (N.D. Okla. Apr. 6, 2014) (holding that "any error at step four in failing to include limits on superficial contact with co-workers and no contact with the public" was harmless because "none of the job descriptions require any contact with the general public").

## CONCLUSION

For the foregoing reasons, I will **DENY** plaintiff's motion for judgment of reversal and **GRANT** the Commissioner's motion for judgment of affirmance.   A separate order will accompany this opinion.

RICHARD J. LEON
United States District Judge

---

lowest level of interpersonal interaction. *See Goforth v. Colvin*, 2014 WL 1364992, at *6 (N.D. Okla. Apr. 6, 2014) (describing Level 8 jobs as "consistent with superficial contact with supervisors and co-workers").

[3] The descriptions of these jobs are available in the Dictionary of Occupational Titles: Mail Sorter, DOT 209.687-022; Marketer, DOT 209.587-034; Office Helper, DOT 239.567-010; Final Inspector, DOT 727.687-054; Racker, DOT 735.687-026; Inspector, DOT 733.687-062. *See* Dictionary of Occupational Titles, https://occupationalinfo.org/dot_search.html (last visited July 10, 2026).